PETTIGREW, J.
LThis is an appeal by the Louisiana Department of Health and Hospitals (DHH) of an administrative adjudication that was adopted by the district court by judgment dated July 24, 2014, which reversed DHH’s denial of the application of John Ford d/b/a The Clinic at Villas at Angel Point (the Clinic) to participate in the Medicaid program, and ordered DHH to grant that application and allow the Clinic to participate in the Medicaid program as a physician provider. After a thorough review of the record, we find the decision of DHH was -not arbitrary and capricious and reverse the judgment of the district court.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Several years prior to the application at issue in this matter, John Ford and his wife were the owners of Angel Manor, L.L.C. (Angel Manor), which was enrolled in the Medicaid program under three sepa *334 rate provider numbers: (1) No. 00045, which provided personal care attendant services; (2) No. 17817, which provided long term-personal care services; and (3) No. 13449, which provided adult day health care services. Beginning in 2006 and continuing through 2011, DHH, through its Program Integrity Unit, issued numerous notices to Angel Manor concerning billing discrepancies (billing for undocumented services, overlapping billings, and over-billing) that occurred during the period ranging from June 2003 through July 2009. Angel Manor was informed that the results of informal hearings, concerning these alleged violations, affirmed recovery amounts from Angel Manor, totaling $204,798.02 and a proposed exclusion from Medicaid participation for a period of five years. In the last notice, dated April 18, 2011, DHH indicated that Angel Manor contested the proposed exclusion as well as the recovery amount (which by that time had been reduced by modification to a total of $126,838.90).
Thereafter, the Fords d/b/a Angel Man- or filed an administrative appeal of DHH’s findings. However, prior to a hearing on Angel Manor’s appeal, the parties reached a settlement agreement, effective September 15, 2011. In that agreement, the parties agreed that the sum of $126,838.90 had been recouped and constituted full settlement of all of the monetary recovery at issue. Additionally, the Fords (Angel Manor) agreed to [svoluntarily relinquish two of its provider numbers (00045 and 17817) and retain only their adult day health care service provider number, 13449. The Fords also agreed to dismiss their appeal of the proposed sanctions. In return, DHH agreed to grant the Fords and Angel Manor a “full and final release of all administrative and/or civil claims, demands, actions, rights of action and/or causes of action brought or that could have been brought by DHH in relation to services billed by Angel Manor for the period of 06/01/04 through 12/31/09.”
In February 2013, John Ford, as principal owner of the Clinic, submitted an application (the one at issue in this appeal) with DHH to enroll in the Louisiana Medicaid Program (Medicaid) as a physician group provider. In that application, John Ford properly disclosed his ownership of Angel Manor, the previous proposed sanctions, and attached a copy of the settlement agreement.
Because of the prior sanctions and the proposed five-year exclusion of Angel Manor from Medicaid, the application was routed to DHH’s Program Integrity staff for review and determination. By letter dated May 21, 2013, DHH denied the application, stating that the decision was made “in the best interest of the Medicaid Program” and citing La. R.S. 46:437(9) as its authority for the denial.[1] Specifically, DHH noted that its decision to deny the application was based on the sanctions that had been proposed against other entities (i.e., Angel Manor) owned by John Ford and his wife during previous enrollments with Medicaid.
John Ford, as principal owner of the Clinic, appealed the denial of its application by filing a request for administrative review of that denial, urging that the settlement agreement reached between them *335 and DHH fully resolved all claims concerning the complaints and proposed sanctions for alleged billing discrepancies involving Angel Manor. 14After a full evidentiary hearing, Administrative Law Judge Gregory Toney (ALJ) issued a Recommended Decision and Order on September 27, 2013, reversing DHH’s denial of the Clinic’s application, finding that the settlement agreement expressly constituted a “full and final release” of all claims and/or rights or causes of action against Angel Manor by DHH “in relation to the services billed by Angel Manor.”
The ALJ’s Recommended Decision and Order was sent to the Secretary for DHH for a final administrative decision, pursuant to La. R.S. 49:992(D)(2)(b)(iii)(aa).[2] ■ In a fourteen-page detailed decision, dated October 14, 2013, DHH declined to adopt the ALJ’s recommended decision, and instead ruled, “[t]he denial of the application for enrollment as a MEDICAID physician group provider was an appropriate decision within the discretionary authority of the Secretary, of [DHH].” On November 5, 2013, John Ford d/b/a the Clinic, filed a petition for judicial review of that decision.
On July 7, 2014, a hearing was held in the district court, following which a judgment was rendered on July 24, 2014, reversing DHH’s decision on the basis that its denial of the Clinic’s application was arbitrary and capricious, and ordering DHH to grant said application and allow the Clinic to enroll in the Medicaid program as a physician provider. DHH appeals that judgment.
ASSIGNMENT OF ERRORS
DHH asserts the district court erred by failing to apply La. R.S. 46:437.14(A)(9) and La. R.S. 46:437.13(0(2) properly to the facts of this case. DHH further asserts the | .^district court erred in allowing the settlement agreement between Angel Manor, LLC and DHH to “immunize” the Clinic from having its application denied on the basis of those two statutes. Finally, DHH challenges as erroneous the district court’s determination that its rejection of the ALJ’s recommendation was arbitrary and capricious, when such action by DHH is authorized pursuant to La. R.S. 49:992(D)(2)(b)(iii)(aa).
APPLICABLE LAW
The assignments of error challenging the district court’s failure to apply certain statutes to the facts' of this case allege errors of law, which are reviewed by this court de nova Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731, 735; Bertrand v. Dow Chemical Company, 2005-1246 *336 (La.App. 1 Cir. 12/20/06), 951 So.2d 263, 268.
As to the remaining assignments of error, this court, in a recent unpublished decision, Doctors Hosp. of Augusta v. Department of Health and Hospitals, 2013-1762, pp. 3-4 (La.App. 1 Cir. 9/17/14), 2014 WL 4658202, writ denied, 2014-2163 (La.12/8/14), 153 So.3d 444, set forth the law applicable to our standard of review of a final decision of an agency adjudication as follows:
The Louisiana Administrative Procedure Act (APA), at La. R.S. 49:964G, governs the judicial review of a final decision in an agency adjudication, providing that:
G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of the evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.
The APA further specifies that judicial review shall be conducted by the court without a jury and shall be confined to the record. La. R.S. |fi49:964(F). When reviewing an administrative final decision, the district court functions as an appellate court. Wild v. State, Dep’t of Health and Hospitals, 2008-1056 (La.App. 1st Cir.12/23/08), 7 So.3d 1, 6. Once a final judgment is rendered by the district court, an aggrieved party may seek review by appeal to the appropriate appellate court. La. R.S. 49:965. On review of the district court’s judgment, no deference, is owed by the court of appeal to the factual findings or legal conclusions of the district court, just as no deference’s owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal Wild, 7 So.3d at 6. Consequently, this Court will conduct its own independent review of the record in accordance with the standards provided in La. R.S. 49:964G.
This Court must review the decision of DHH to determine if it was arbitrary or capricious or characterized by an abuse of discretion or to determine if it is not supported by a preponderance of evidence. The decision of DHH is considered the final decision, not the determination by the administrative- law judge. La. R.S. 49:992(D)(2)(b)(iii)(aa); see also 42 U.S.C. 1396. This dispute may be analyzed under either La. R.S. 49:964G(5) or (6), because when the issue on review is an administrative agency’s evaluation of the evidence and application of law to facts, our review becomes somewhat intertwined. Wild, 7 So.3d at 6. Credibility determinations of evidence are specifically considered as factual questions under La. R.S. *337 49:964G(6), but the application of the law to the facts at issue is a legal conclusion subject to analysis under La. R.S. 49:964G(5). Wild, 7 So.3d at 6-7. An arbitrary decision shows disregard of evidence or the proper weight thereof while a capricious decision has no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. Carpenter v. State, Dep’t of Health and Hospitals, 2005-1904 (La.App. 1st Cir.9/20/06), 944 So.2d 604, 612, writ denied, 2006-2804 (La.1/26/07), 948 So.2d 174.
A reviewing court should afford considerable weight to an administrative agency’s construction and interpretation of its rules and regulations adopted under a statutory scheme that the agency is entrusted to administer, and its construction and interpretation should control unless the court finds it to be arbitrary, capricious, or manifestly contrary to its rules and regulations. Rachal, ex rel. Regan v. State, ex rel. Dep’t of Health and Hospitals, 2009-0786 (La.App. 1st Cir.10/27/09), 29 So.3d 595, 603, writ denied, 2009-2588 (La.3/5/10), 28 So.3d 1013. An interpretation used by the state administrative agency may be persuasive, but inconsistent interpretation of the overall scheme or use of the wrong rule cannot stand. Women’s and Children’s Hosp. v. State, Dep’t of Health and Hospitals, 2007-1157 (La.App. 1st Cir.2/8/08), 984 So.2d 760, 766, aff'd, 2008-946 (La.1/21/09), 2 So.3d 397. If the evidence, as reasonably interpreted, supports the determination of an administrative agency, its orders are accorded great weight and will not be reversed or modified in the absence of a clear showing that the administrative action is arbitrary and capricious. Id. Hence, the test for determining whether the action is arbitrary and capricious is whether the action taken is reasonable under the circumstances. Stated differently, the question is whether the action taken was without reason. Id.
The applicable provision of the Medical Assistance Programs Integrity Law, La. R.S. 46:437.14(A)(9), authorizes DHH to deny enrollment in Medicaid to a provider if any person having an ownership interest of five percent or greater has been sanctioned |7pursuant to federal or state laws relative to the Medicaid program, Medicare program, or any other public health care or health: insurance program. Additionally, and in conjunction therewith, La. R.S. 46.437.13(C)(2) also grants DHH the discretionary authority to deny án application for enrollment in such programs if, based on the grounds listed in La. R.S. 46:437.14 the Secretary determines that it is in the best interest of the medical assistance programs do so, as long as DHH specifies its reasons for the denial.
DISCUSSION/ANALYSIS
The Clinic maintains that DHH was arbitrary and capricious in refusing to follow the ALJ’s recommendation, and also urges that the settlement agreement entered into between Angel Manor and DHH, relating to the prior sanctions levied against it and compromising all claims DHH may have as a result thereof, prohibits DHH from denying its current application for enrollment in the Medicaid program. We disagree.
While we recognize that the settlement agreement constitutes a compromise, which by law, has a force equal to the authority of the thing adjudged; the compromise at issue herein covered all rights, claims, and/or causes of action DHH may have had relating to the actions of Angel Manor from June 2003 through December 2009. However, a compromise settles only those differences that the parties clearly intended to settle. La. C.C. art. 3076. *338 (Emphasis added.) A compromise does not affect rights subsequently acquired by a party, unless those rights are expressly included in the agreement. La. C.C art. 3078. (Emphasis added.)
Notably, the settlement agreement does not mention or contain any agreement regarding future applications for enrollment in the Medicaid program by Angel Manor or the Fords. Therefore, notwithstanding the settlement agreement, DHH continued to have the statutory authority, pursuant to La. R.S. 46:437.14(A)(9), to deny any application based on the applicant having previously been sanctioned for violations of the Medicaid program. Additionally, DHH continued to have the statutory authority and discretion, pursuant to La. R.S. 46:437.13(0), based on those prior sanctions/to deny an application if the Secretary of DHH determines that it is in the best interest of the Medicaid program 18to do so. Neither statute requires that the prior sanctions be fully adjudicated, nor is the application of those statutes precluded by any settlement reached as to the prior sanctions. The statutory language is clear and unambiguous: it allows DHH to deny an application for enrollment as a provider in the Medicaid program based on the fact that such applicant has been previously sanctioned for violations thereunder.
A statute must be applied and'interpreted in a manner that is logical and consistent with the presumed and fair purpose and intention the Legislature had in enacting it. City of Bossier City v. Vernon, 2012-0078 (La.10/16/12), 100 So.3d 301, 305.
John Ford argues that because the Fords entered into a settlement agreement with DHH, that, they were not “sanctioned” by DHH for billing violations. However, in the settlement agreement, the Fords voluntarily allowed recoupment for the alleged improper billings in the amount of $126,838.90 and they voluntarily agreed to relinquish two of their, three provider numbers in exchange for DHH not pursuing any other claims or causes of action related to those billing violations.
Moreover, La. R.S. 46:437.3(27) provides that “sanction” shall include, but is not limited to any or all of the following:

(a) Recoupment.

(b) Posting of bond, other security, or a combination thereof.
(c) Exclusion as a health care provider.
(d) A monetary penalty.
(Emphasis added.)[3]
Thus, John Ford cannot deny that he and his wife (as owners of Angel Manor) were sanctioned by DHH or that the application of the applicable provisions of law allows DHH to deny a subsequent, unrelated application for enrollment in the Medicaid program, such as the one filed by John Ford d/b/a the Clinic, on February 10, 2013. That application, which was denied, was undisputedly a new, separate, and distinct application, seeking enrollment as a physician group provider for the Clinic, a new and separate entity.
| ;iThe letter from DHH, notifying John Ford d/b/a the Clinic of the denial of the application for the Clinic to enroll as a physician group provider, expressly stated that the denial was based on the fact that during the Fords and Angel Manor’s previous enrollment in the Medicaid program, they had been sanctioned by DHH, and additionally noted that the decision to deny enrollment was made after a determination that it was in the best interest of the *339 Medicaid program, its recipients, and the taxpayers that the application be denied.
Thus, there is no merit to John Ford d/b/a the Clinic’s contention that DHH was arbitrary and capricious in refusing to accept the ALJ’s recommended decision and order, when that decision and order is contrary to the clear language of the applicable statutes. Moreover, DHH acted with statutory authority in reversing the ALJ’s recommended decision and order, pursuant to La. R.S. 49:992(D)(2)(b)(iii)(aa).[4]
CONCLUSION
For the foregoing reasons, we find the district court erred in not applying the appropriate statutes to the facts of this case. Application of those statutes leads to the inescapable conclusion that DHH had the statutory authority to deny the application made by John Ford on behalf of The Clinic at Villas at Angel Point. Therefore, ■ the district court also erred in finding DHH’s denial of that application was arbitrary and capricious when, instead, it was wholly within DHH’s statutory authority to do so.
Accordingly, the July 24, 2014 judgment of the district court, reversing DHH’s denial of the application of The Clinic at Villas at Angel Point and ordering DHH to grant the application and to allow The Clinic at Villas at Angel Point to participate in the Medicaid program as a physician provider is reversed. Costs of this appeal are assessed to John Ford d/b/a The Clinic at Villas at Angel Point.
REVERSED.
WELCH J. dissents and assigns reasons.

. We note that the citation provided by DHH in its denial letter is incorrect; the correct citation upon which the denial was based is La. R.S. 46:437.14(A)(9), which provides that DHH can deny an application based on:
Sanction pursuant to a violation of federal or state laws or rules relative to the medical assistance programs, any other state’s Medicaid program, Medicare, or any other public health care or health insurance program.

. That provision states:
If a department or an agency within the department may delegate its fair hearings function but is required by federal mandate to render the final decision or order in an adjudication proceeding, then in those cases, the division shall conduct the hearing and issue a recommended decision. The recommended decision shall be mailed or delivered to the head of the agency, who shall have, upon receipt of the recommended decision, thirty-five days to reject, modify, or approve the decision. If he rejects or modifies the recommended decision, he shall specify in writing the findings ofp fact or conclusions of law which are being rejected or modified which shall be considered to be the final decision or order in the adjudication proceeding. A copy of the department or agency’s rejected or modified decision shall be forwarded to the division on the day it is issued. If the agency head does not reject or modify the recommended decision within thirty-five days, or if he approves the recommended decision, then the recommended decision of the division shall be certified as the final decision or order of the department or agency in the adjudication proceeding.

. See also LAC 50:I.4161(A)(10) & (14), which permits the imposition of recoupment and or exclusion from the Medicaid program as sanctions for prohibited conduct. (Emphasis added.)

. See footnote 2.